Next case on our call this morning is agenda number 13, case number 109039, John O'Brien v. Lisa O'Brien. Just a moment, counsel. You may proceed, sir. May it please the court, Mr. Chief Justice, Justices, my name is Randy Johnson. Along with my colleague at counsel table, Edward Siebert, we represent John O'Brien. Your Honors, this case presents a unique opportunity for this court to establish a standard and rule of law which will have a positive effect on how every litigant in the state of Illinois is touched by and perceives the proper administration of justice in this state. Accordingly, on behalf of John O'Brien, I respectfully ask this court, as a result of the decision of the United States Supreme Court in the case of Caperton v. A.T. Massey Coal Company, to overrule all case law in Illinois which relies upon the actual prejudice bias standard as a proof requirement to obtain a substitution of judge for cause. This request is necessary as the Supreme Court has determined that the actual prejudice bias standard as a standard of proof for substitution of judge for cause can no longer be required under the due process clause. And the reason for that is that that standard is completely subjective. It is antithetical to objective review, which minimal due process requires. We've had... What's wrong with Justice O'Malley's analysis and his special concurrence that 63C1 only provides ethical guidelines and should not be read to establish the standard, but the standard's actual prejudice, which must be adjusted to meet the minimum due process requirements of Caperton. Are you okay with that? Your Honor, in... Justice O'Malley's analysis of this Court's Rule 63 operation, and when he looked at the preamble to Rule 63, I think what... was pointing out is that certainly this Court's Rule 63 does not in and of itself provide a procedural vehicle to bring a motion for substitution of judge. However, it does provide a basis in which to cite and refer to in a motion under statute section 1001. It provides a possible basis for a substitution of judge. Certainly, I agree with Justice... Mr. Justice O'Malley that Rule 63 doesn't provide a procedural vehicle, but it very well may and does, we believe, provide a factual scenario to cite in a motion coming under 1001 that would support a substitution of judge for clause. Indeed, Rule 63... is not a guideline, then. It's a standard. Pardon me, Your Honor? Under your interpretation, then, it's not a guideline, but the appearance of impropriety would actually be a standard, wouldn't it? Yes, it would. It would. So in that way, you disagree with his analysis? I think... I think this. I'm not sure that Justice O'Malley said whether or not there should be a standard established as an appearance of impropriety. I think Justice O'Malley indicated quite clearly that the case law under the standard was contradictory. There were cases that... and there was a hearing based on that motion and no finding of actual prejudice, right? That's correct. You would still purvey it, or you would want us to say you would still purvey it? Yes, Your Honor. So you are saying, then, that that rule then provides the new basis for substitution for clause? Yes, I am, Your Honor, to the extent that the facts... that a violation of that rule could provide substantive facts in which to cite in a 1001 motion, then, yes, Your Honor, I am. This Court's Rule 63 obviously absolutely forbids ex parte contacts, except under certain exceptions which are not applicable in this case. Counsel, is this a statutory interpretation question? Pardon me, Your Honor? Is this a statutory interpretation question? No, Your Honor. What clause means? No, Your Honor, because Statute 1001, all it talks about as far as substitution of judge for clause, that's all it says. It doesn't tell us what clause means. All of the explanations in regard to what clause means comes from the case law. And the case law has said you must show actual prejudice. The case law also in Illinois has said that you have to show actual prejudice plus evidence of prejudicial trial conduct. The Wheatley case and the Bradshaw case and also a recent case from this court, the Barth case, seem to indicate that an appearance of impropriety is a proper standard for substitution for clause. There's going to be a lot of substitutions, aren't there? I mean, if a judge gets off an elevator and it shows that somebody said hello, that one of the litigants said hello to the judge and that's the exclusion of it, it seems to me under your interpretation that there would be an appearance of impropriety, but no actual impropriety, no actual prejudice if nothing was said out of that, but just the mere appearance of impropriety would justify a change for cause. Your Honor, it's a very interesting point because even our courthouses architecturally are set up to avoid just that. We have separate entrances for judges in many of our courthouses. We have walls between the judges' chambers and the general population, the litigants. Now, not every single contact, obviously. I'm sorry, Your Honor. What was the actual communication here, the ex parte communication? What were the facts in this case? What was the actual context? Yes. The context was that Ms. O'Brien was an employee of a health club. The trial judge. What was the actual communication? According to Ms. O'Brien, the actual communication was, hello, Judge Waldeck. However, with all due respect, number one, that was an ex parte contact. Number two, it took place during the pendency of the trial in this case. Number three, it happened on more than one occasion. Number four. She worked at a health club that he frequented. Yes, Your Honor. Number four, the judge, after the first occasion. So if we answer that question, Judge Freeman's question, there were two contacts. Is that right? The witness said several. The trial judge who tried the motion, Judge Stark, on page 92 of the record, said the actual evidence that I have is from the wife testifying, that on two occasions she saw Judge Waldeck at the health club and said hello, Judge Waldeck, one time. She said hi. I saw him twice and spoke to him once. Judge Stark said twice, Your Honor. Okay. He said there were two contacts. But I don't want to get lost here. There was a hearing. Judge Stark conducted a hearing with respect to actual prejudice, found no actual prejudice. Yes. That the judge was not prejudiced against your client. Yes. You are not arguing here, nor are you saying that there wasn't a hearing, nor are you saying that there was an abuse against the man that Judge Stark found against the manifest weight. You're saying a different standard has to apply. Absolutely. You are saying that there is a per se right to a change for cause based on an appearance of impropriety. Absolutely. That's our position, Your Honor. So there really isn't any reason. Well, I guess you have a hearing just to establish the fact that an ex parte contact took place. Yes, Your Honor. But as soon as that is resolved, it's per se change for cause in every situation. That would be our position unless this court should see fit to construct a methodology by which if there was an initial ex parte contact for the trial judge to bring both parties into court, explain it on the record, and seek a waiver from both parties. That could have happened here. It could have been very simple, but that's not what happened here. Well, so everybody that stands up there says my process will be very simple. And the fact of the matter is none of them are simple. And this is not simple. I mean, I can just see this as being terribly burdensome to the trial of lawsuits in the state of Illinois. Respectfully, Your Honor, I think it could be terribly burdensome if we added on a whole new level of litigation in order to determine whether or not the judge was actually doing what he was supposed to be doing. And that's what we're doing. And certainly and respectfully, that's precisely what you're doing. You're saying there has to be a hearing under this new standard of appearance of impropriety. And I believe, Your Honor, that in a situation of... No matter how small the contact, no matter how innocent the contact. The problem is this Court's rule, respectfully, Your Honor, Rule 63 says no contact. And no means no. Mr. Johnson, you know, typically, you know, this Court has, we realize that when we make a pronouncement in a case, it doesn't just affect this case. Correct. I mean, you're asking us to change an entire standard. And so it affects a lot of cases. Absolutely. And how substitution of judge cases would be handled from the point of this opinion being offered ad infinitum. Right? Yes, Your Honor. But as I sit here, rarely does what's being requested of the Court affect a whole other category of cases. And what I'm getting at is, in a criminal matter, ineffective assistance of counsel, right? Yes, sir. Oftentimes, this Court goes to the second prong of that test and determines whether there's any prejudice. Attorneys do things wrong all the time. And it affects litigants. It affects criminal defendants. And we look at whether there was any prejudice. So how could we in good conscience keep that standard, and yet in a divorce case, in which there's an ex parte communication, which is found to not create any actual prejudice, we would say, no, there's an appearance of impropriety here. You're entitled to a change. Because, first of all, because respectfully, there are obviously two different areas of law. I'm not trying to say that one is either more important than the other. But secondly, the United States Supreme Court in Caperton, specifically dealing with substitution of judge, has declared that the Due Process Clause no longer requires proof of actual prejudice. Pretty extreme case, though, right? Caperton versus this case? In the context of that, correct, Your Honor. Justice Kennedy went on further, though, to explain the reason that courts throughout the land aren't going to be flooded with Caperton due process motions is because at least 39 states, in the brief that we mentioned that was filed with the ABA, at least 39 states have adopted standards, essentially the appearance of impropriety standard to preclude those types of issues. Mr. Johnson, don't you find it difficult thinking about this? I mean, it puts a judge in a catch-22 situation on the defensive, so to speak. What if the witness here was the cashier at a grocery store? Does that mean the judge now has to change his place of doing business because she happens to be there? What if he sees this witness on the street or the person who is a litigant in front of them on the street? Does he have to turn around and go the other way? No, Your Honor. To avoid contact? I think what we're talking about is we're talking about an actual one-on-one contact with the litigant. But in a grocery store there's an actual one-on-one or walking down the street and she says, hi, Judge, how are you? And that's an actual contact. What is he supposed to do or she supposed to do? Assuming that there was a case pending, I would expect that the court would have told his or her clerk to get these litigants in front of me. But if it's a per se rule, then he'd have to recuse himself. Your Honor, I think that perhaps the amicus brief in this case takes a closer and much better possible or gives a closer and better result because at least there's a suggestion on how to handle these things so as to not necessarily require in the end an automatic recusal, as it were. In this case, after the first ex parte contact, nothing happened. The trial court did not bring this to the attention of the parties. He goes to the health club all the time. You'd have to assume that he's going to have to run into her or if he goes to that particular grocery store where she was a clerk, you know that he would be in contact with her. I don't know that for sure, Your Honor. Her employment was simply as an accountant in the back room of the health club. I don't know the extent of the employment other than she was doing accounting work for the health club. Mr. Johnson, is it your position that even if the judge didn't know who she was, which the record seems to indicate, and she said hi or she said hello, that under the rule requires him to bring this to the attention of the party when the rule in fact says concerning a pending or impending proceeding. It doesn't say ex parte communication. It says concerning pending litigation. You've left that out of the equation, I believe. Your Honor, the answer to that is no, but respectfully, I don't believe that it's all that clear, first of all, that the trial judge didn't recognize this person. This litigation between these parties had taken place earlier before this judge, and certainly at least the testimony of the party adverse to my client indicated that they had been before this judge on frequent occasions. So because of the nature of this ex parte contact, it places the... But the ex parte contact had nothing to do with the pending litigation, did it? Is there anything in the record to substantiate that? There's nothing in the record, and I believe, Your Honor, respectfully, it would have been almost impossible to place something like that on the record. We certainly couldn't have called the trial judge under our applicable law. And if we were to only accept... But the record just says she said hi and she said hello. That's the record, is it not? On two occasions. Right. On two occasions. That is the record. So that's what we have. That's what we have. But if we say, Your Honor, that no ex parte contact takes place simply because two people don't discuss the case, does that mean that the trial judge and Ms. O'Brien could have gone out to lunch a half dozen times and never mentioned the case? Would that have been okay? Respectfully, I don't believe so. I don't believe that any right-thinking person who was concerned about the perception of the public, of the administration of justice, would agree that that would be an appropriate conduct. Your hypothetical would give you leave to file an appeal based on the fact that it was against the manifest way to the evidence that there wasn't any actual prejudice. And similarly, if the Kaepernick case had come before a state court in Illinois, wouldn't that same argument be able to be made? You know, $3 million donation to a campaign fund and then not recusing yourself on the case, almost taking judicial knowledge or employing some type of objective test and saying, how can there not be bias? I'm sure that if that had been the situation, the facts certainly would have been argued. What's problematic about your position, though, is that we undertake an analysis that if there is an ex parte communication, in fact, I think you've agreed that your analysis is that it's per se a change, per se bias. Unless waived, Your Honor. Right. Okay. May I make one statement, Mr. Chief Justice? If it's truly one statement? Yes. First of all, listen to the question. I did not argue my other issues by not doing so. I do not mean to waive them respectfully. Somebody has a question for the lawyer. Yes. What specifically were the allegations regarding the attorney and his bias towards the judge? Bias towards? Yes, the judge's bias towards the attorney in this case. That was the allegation. There were allegations, but I don't think, Your Honor, the evidence presented in the record would necessarily support that. I think the only evidence in the record that truly supports our position is the finding by Judge Stark that, in fact, there were two ex parte contacts. Thank you.  Thank you, Your Honor. Counsel, I don't think you heard me. I'm sorry, Your Honor. You said that you hadn't argued one of your points. I simply meant to say, Your Honor, by the fact that I have not argued my other points in my brief, I did not mean to waive them. Okay. Thank you, Your Honor. Counsel, you may proceed. May it please the Court, Counsel, good morning. My name is Mark Vogt. I'm here with Co-Counsel David Del Rey. We're here today on a Certificate of Importance issued by the Second District Appellate Court. The Second District felt there was confusion as to the proper standard that should be employed when ruling on a motion to substitute a judge for cause. That is certainly an important point. It's an important issue and an issue I'm going to address. Equally important to my client is a finding that, regardless of the standard that the Court articulates, Mr. O'Brien did not meet his burden under any possible standard that could apply in this case. There are two standards that have been employed when ruling on a motion to substitute for judge. The first standard is articulated under Section 2-101 of the Illinois Code of Civil Procedure. Under that standard or test, the moving party has to prove by a preponderance of the evidence actual prejudice. Mr. O'Brien concedes that he has not and cannot establish actual prejudice. Judge Stark in the Appellate Court clearly ruled that Mr. O'Brien did not and could not meet that standard. He was given every opportunity to have a full and fair hearing on his motion. He put forth speculation and hearsay, but almost no admissible evidence. The only admissible relevant evidence was that Mrs. O'Brien on two occasions, as she passed Judge Waldeck in a parking lot, said hello. The uncontradicted testimony was that Judge Waldeck did not even recognize her on those two occasions. Judge Stark and the Appellate Court and now Mr. O'Brien all agree there is no actual prejudice here. The second test is the test that has sometimes been stated based on Canon 63 of the Judicial Code. Under that test, the standard, under either test, the standard is whether the judge abused his discretion in applying that test. Again, from my perspective, my client's individual perspective, the appearance of impropriety, under Canon 63, Mr. O'Brien simply did not meet his burden to show an appearance of impropriety. Judge Stark and the Appellate Court agreed with that. The petitioner relied on the In re Wheatley case, both in front of Judge Stark and in front of the Appellate Court. That case did articulate the appearance of impropriety test. Judge Stark cited the Wheatley case and specifically held under that standard Mr. O'Brien did not meet his burden of proof. Again, the only admissible evidence was that on two occasions Lisa O'Brien said hello to Judge Waldeck in a parking lot. And this Court has held in People v. Hicks that chance encounters do not require the removal of a judge. The Court stated that to say that any involuntary meeting or conversation, no matter how trivial, gives rise to cause for disqualification would present too easy a weapon with which to harass the administration of criminal justice and obtain a substitution of judge. We've got two occasions where Lisa O'Brien said hello to Judge Waldeck in a parking lot and no evidence in the record that he even recognized her. The Appellate Court agreed the motion was properly denied. The majority went through the test under the Code of Civil Procedure, went through the test under Canon 63, and also any possible test that could apply based on the Caperton decision. And the majority unequivocally concluded that the petitioner's motion to substitute for cause fell far short of meeting any of the aforementioned standards. Judge O'Malley also agreed in his concurrence that regardless of the standard that is articulated, based on the record we have before us, Mr. O'Brien could not meet that standard. For that reason, on the individual issue as to my client, I would request that the motion for substitution of cause, that the denial of that should be affirmed. That still doesn't resolve the issue of the proper standard that should be applied. With all due respect, I agree with Judge O'Malley that if we adopt the appearance of impropriety standard or test, and if we apply or if you rule that Canon 63 now governs these motions, that the test under Section 2-1001 of the Code of Civil Procedure will be rendered virtually meaningless. The test under the Code of Civil Procedure is a strict test for good reason. Accusing a judge of prejudice is a serious accusation, and one that this Court and other courts have recognized tends to disrupt the orderly flow of justice. The reason the bar is set so high under the Code of Civil Procedure is because it shouldn't be easy to remove a judge. And I believe that for that basis, we should continue to apply that standard. Okay. Mr. Vogt, the statute 1001 is actually silent as to prejudice. It says cause, does it not? I think you acknowledge the prejudice comes up through case law. That's been the standard. But if it says cause, isn't there some – doesn't that give some support to the argument made by your opposing counsel that Caperton look to the rules, the canons of ethics or canons to guide judges to say that a violation of those canons would in fact give rise to cause? How would you respond to that? Yes. The statute does say for cause. The case law has interpreted that to require actual prejudice. Caperton merely cited the canons of ethics as an example in response to a question or to a concern that their decision that in certain extreme situations due process will be implicated. The court responded that this is just a floor and that it recognized that in some situations there already are standards that are raised the bar above that floor. Caperton, though, did not hold that it is unconstitutional to apply the test set forth in the Code of Civil Procedure. The test has been interpreted to require actual prejudice, but certainly a party can show basis for cause as the statute provides. I think the way to harmonize these two tests, the appearance of impropriety and the test under the Code of Civil Procedure, is set forth in that judicial code and in the case law. The case law rightfully infers and assumes that the judges are unbiased and unprejudiced, and if we cannot make that presumption, then the system cannot function. The judicial canon states that they are not meant to be used offensively by the parties and their lawyers. The purpose of the code is to provide guidance to judges and not to be invoked by lawyers for mere tactical advantage in a proceeding. The canons are not to be used by lawyers. Now, the canons certainly exist and the judges are expected to follow them, but the canons specifically state that the litigants are not to be using these canons offensively. Again, we have to assume that the trial judge is unbiased and unprejudiced. Trial judges recuse themselves all the time on their own without even a motion. There can be any number of reasons for that recusal, but they abide by their ethics, and that's part of the orderly administration of justice that functions in this state. In this particular case, Judge Waldeck certainly did not believe he was prejudiced or biased against Mr. O'Brien or that there was any improper conduct. He followed his judicial ethics. As the court noted, the petitioner is essentially arguing that any ex parte conduct automatically creates an appearance of impropriety requiring removal, and with all due respect, I do not believe that is the law, and it is certainly not practical or possible to enact such a standard. Judges of this state are members of their community, and many of them are elected officials. They meet a lot of people, and they are coming into contact with people all the time, and the system functions when we rely on the judges to follow their judicial canons and we allow the parties to use the Illinois Code of Civil Procedure if they believe they are prejudiced by a judge and they come in and have a fair and impartial hearing against a separate judge, which is what the Code of Civil Procedure allows. Any concerns about not allowing parties to use the judicial canons offensively are eliminated, I believe, by the Caperton decision. The Caperton decision acts as a safeguard in the sense that Caperton rules that in certain extreme situations, constitutional levels of due process protection can arise in a motion to substitute for cause. However, Caperton is very clear in its opinion that it applies in extreme situations, which clearly are not present in this case. Spending millions of dollars to help elect a judge that casts a decisive vote overturning a $50 million verdict against that party is certainly much different than saying hello to a judge on two occasions. Because of these safeguards, the safeguards and the floor of the constitutional protections under Caperton, again, I do not believe that the judicial code should be allowed to be used offensively by a party to seek removal of a judge for cause. Again, Caperton held that most matters relating to judicial qualification do not rise to a constitutional level. There is nothing in Caperton that says applying the test set forth by the codal civil procedure is unconstitutional. Mr. O'Brien had his day in court. Mr. O'Brien was allowed to present any and all evidence that he felt relevant to Judge Stark to establish actual prejudice by Judge Waldeck. Mr. O'Brien failed miserably in meeting that burden. The three justices of the appellate court and Judge Stark considered both the actual prejudice test under the codal civil procedure and the appearance of impropriety test as has been espoused by or attributed to the canon 63 of the judicial code. Again, the appellate court for the second district would like this court to articulate a clear standard, but regardless of the standard that's employed, again, I would just ask this court to affirm the denial of the motion for substitution of cause on the basis that under any possible standard that could be articulated, Mr. O'Brien just simply did not meet his burden of proof. If there's any questions? Thank you. Thank you, counsel. Your Honors, the Caperton decision did not say that the only time due process does or doesn't require a showing as a matter of proof of actual prejudice is when we have an extreme case. That's not what the Caperton decision says. It says that in lieu of exclusive reliance upon that inquiry, meaning the actual prejudice inquiry, or on an appellate review of the judge's determination respecting actual bias, the due process clause has been implemented by objective standards that do not require proof of actual bias. So when we get into this discussion about do you have to show actual bias, do you have to show actual prejudice, respectfully, according to the Caperton decision, that's no longer necessary. That inquiry misses the point. It misses the point of protecting integrity of the entire process. Simply because you say that there is an appearance of impropriety, that does not make some type of an attack upon an integrity of a judge. We made it very clear in her brief. Perhaps Judge Waldek had a million other things in his mind that day. That doesn't make him a bad or immoral judge. But because you didn't come back to court and say, you folks need to know about this. This is what happened out in that parking lot. It's our position that he made a legal error. He made a legal mistake. But that doesn't make him a bad man or a bad judge or somehow dishonest. Everyone makes mistakes. And lastly, counsel mentions this court's decision in People v. Hicks. We responded to counsel's argument in our reply brief. It defies logic how an opposing counsel can argue that his client can have two ex parte contacts with a trial judge in the middle of a divorce case. And by her conduct, that gives my client an easy weapon to play around with the administration of justice. I don't think any right thinking person would logically transform that into giving my client a weapon to harass the administration of justice. My client didn't have the ex parte contacts. Opposing counsels did. And we shouldn't have to rely on the testimony of an opposing litigant who already has disregarded the law about not having ex parte contacts. It's just plain as day. She had the weapon. She had the opportunity to perhaps even by nonverbal contact to establish a report with this trial judge during this trial. My client wasn't given that opportunity. My client wasn't out in that parking lot. He didn't have an opportunity to testify regarding his observations about what this contact consisted of. That was the deprivation of due process. Counsel, and I'm certainly not suggesting any unethical conduct by anybody. Quite the contrary. No. But the fact of the matter is, and your argument highlights it, the per se rule could possibly result in the efforts by the unscrupulous to create situations in which a judge would be taken off a case. I think it would be, respectfully, I think it would be streamlined. I think it would be easy to deal with. There's no more of this question, well, is this ex parte contact bad enough? Did it actually cause prejudice? Well, counsel, in fact, what's the answer to the question in this situation? Saying hello, is that bad enough? I don't believe that, respectfully, I don't believe that that is a question. That is necessary to be inquired into. It occurred. It violated this court's rules. It occurred twice. And it was never brought into court and placed of record. And my client was never requested to say, well, now that you know what happened, Mr. O'Brien, are you willing to waive this? Otherwise, we continually get back into the same circle, causing more litigation to determine, was it bad enough? That's the beauty of this, the standard that we're advocating, the mere appearance of impropriety. No one has to go behind the doors. No one has to put judges on a stand to testify. That doesn't have to happen. This clarifies it. It streamlines it. And it takes away the insidious decay of the proper administration of justice by diminishing or harming the perceived neutrality of the court. That's what's going on here. When there's an ex parte contact, that diminishes and decays the appearance of neutrality. That's the problem. Well, Kaepernick talked about objective standards to consider psychological tendencies and human weaknesses. Yes, Your Honor. That's what he talked about. And the facts of that case, which have been articulated already a couple of times, you know, we're pretty aggrieved. We're very extreme, Your Honor. All right? So certainly, psychological tendencies and human weaknesses, getting a $3 million campaign contribution, actual bias might not be enough. You can't prove the actual bias in that circumstance. You incorporate some of these other criteria in that extreme case. I think that's pretty much what Justice O'Malley was saying. But when we examine the psychological tendencies and human weaknesses in every case and where there's an ex parte hello to someone, does it raise to that same level where actual bias would not be enough of a standard? I don't think that that would be. Are due process constitutional implications in that setting the same as they are in the setting in Kaepernick? Your Honor, I don't think the due process as a standard is necessarily geared by a case-by-case determination of the facts. And that's why we're advocating for a simple appearance of impropriety standard across the board. Counsel, I have a question. The rule that you talk about extends to lawyers as well as parties. Absolutely. So are judges engaging in ex parte communications when they see a lawyer in many jurisdictions? I've thought about this. Thank you. I mean, they're small jurisdictions. So you encounter lawyers in the street, you may or may not know whether they have any cases in front of you. In every case, the judge is going to say, I think I saw you on the street, and you may have said hello when I said hello. Is that what we're talking about? Your Honor, first of all, to maintain my client's position respectfully, that's not the case before us today. However, I think that there is a greater burden upon an attorney in this state, as a sworn officer of the court, that after this court, whatever it rules in this case, to follow the rules of this court to the letter. And whatever is passed might be passed. But if this court says that these contacts with lawyers also are ex parte communications, then the lawyers of this state are going to have to follow the rules and the orders of this court. We're officers of the court. We took an oath. So while it's a problem, and I certainly understand the importance of your position, Your Honor, I think that the lawyers certainly have to be held and are held to a higher standard than an average layperson or litigant. It seems to me, Mr. Johnson, you're saying, because you've repeated it a number of times, that ex parte communication violates the rule. You're leaving out again the equation that it has to do with pending or impending litigation. Are you advocating a rule that says any ex parte communication, a hi, a hello between lawyers and judges, creates the appearance of impropriety and therefore is violative of paper? Only if there's a pending matter in front of that judge. But it doesn't have to be conversation about a pending matter. It can be a hi or a hello. Yes, Your Honor. That's the rule you're asking for. Yes, Your Honor, I am. Because human contact breeds rapport. People make decisions about people. Our Constitution and our rules require judges to be elected from their own constituency. It might be a county. It might be a sub-circuit. What's the rationale for that, for people knowing the judges and the judges knowing the people they're serving? Your Honor, I understand that certainly election law and the way we do our elections are potential issues, I suppose. However, the only time where both parties ought to be in a position to persuade the court to their position is in an open court in a courtroom when both parties are present. That's why the rule is directed at discussions concerning pending litigation, is it not? Correct. You want us to change our rule. I want it to only involve pending litigation, Your Honor, as it was in this case. The discussion was not about pending litigation according to the record. The discussion was not. Hi and hello. Correct. Correct, Your Honor. But the contact took place. The contact took place during the pending litigation, irrespective of the subject. Would you agree there was no violation of the rule as it exists if there was not discussion about pending litigation? I think, Your Honor, no, I wouldn't. I wouldn't, because the rule says contact. It doesn't even talk about it. One of the sections of it talks about ex parte communication concerning pending litigation. But it also uses the word contact, not necessarily just communication. But it says concerning pending litigation. I understand it. I understand that. The problem with ex parte contacts, it just simply kills the appearance of neutrality. Under your answers to the questions of Justice Carmier, though, what about the situation in which an attorney doesn't like the judge that he has? There's already been a substantive ruling made. Can't take a change of judge. I mean, doesn't that leave open the possibility of ex parte communication by ambush? Hello? I'm glad you asked that. It does, if perhaps, say, Lawyer A gets a bad ruling. Lawyer A wants to substitute that judge. Lawyer A decides to ambush the judge with an ex parte contact. Number one, I don't think if Lawyer A tries to do it, Lawyer A's side of the case should ever, in that situation, be rewarded for Lawyer A's bad conduct. He should not be allowed to do that. That truly would be manipulation of the proper administration of justice. It would be very difficult to tell whether he did that or not, though, wouldn't it? I understand. But the lawyer who does that and the side that does that should not be rewarded for their improper conduct at all.  Thank you, Your Honors. Case number 109039 will be taken under investigation.